CONSENT ORDER -and-AWARD
On the 26th day of May, 2000, the parties to this action, Claimant Nitro Electric Company, Respondent and Third-Party Claimant Regional Jail and Correctional Facility Authority, and Intervenors Silling Associates, Inc., Carlton, Inc., and Insurance Company of North America, came before the Court and *166 requested that the Court enter this Consent Order and Award in order to effect a final resolution of the claims of the parties asserted in this action.
UPON CONSIDERATION of the following, the agreements of the parties hereto, the arguments of counsel, and the consent of the Executive Director of the Regional J ail a nd C orrectional Facility A uthority and t he O ffice o f t he A ttomey General of the State of West Virginia, it is hereby ORDERED as follows:
1. Prior to June 1, 1990, the RJCFA undertook to plan, design, and construct a prison facility to be known as the Mount Olive Correctional Complex, located on Cannelton Hollow Road, County Route 2, Smithers, Fayette County, West Virginia ("Project").
2. On or about June 8, 1990, the RJCFA entered into a contract with Silling Associates, Inc. ("Silling") pursuant to which Silling undertook to provide architectural, construction administration, and project management services related to the design and construction of the Project ("RJCFA/Silling Contract").
3. On or about June 4, 1992, the RJCFA entered into a contract with Carlton, Inc. ("Carlton") pursuant to which Carlton was • to perform all work designated by the Contract Documents as that to be performed by the General Construction Contractor ("RJCFA/Carlton Contract").
4. On or about June 4, 1992, Insurance Company of North America ("INA") issued a performance bond wherein Carlton was named as principal, and INA was named as surety, with regard to the RJCFA/Carlton Contract ("INA Performance Bond").
5. On or about June 4, 1992, INA, issued a labor and material payment bond wherein C arlton w as n amed asp rincipal, a nd I NA w as n amed a s surety, with regard to the RJCFA/Carlton Contract ("INA Payment Bond").
6. On or about June 3, 1992, the RJCFA entered into a contract with Claimant Nitro, pursuant to which Nitro was to perform all work designated by the Contract Documents as that to be performed by the Electrical Contractor ("RJCFA/Nitro Contract").
7 . During the course of the construction of the Project, Nitro contended that it was damaged as a result of, among other things, (1) Carlton's failure to perform properly its scheduling and coordination responsibilities and its work pursuant to the RJCFA/Carlton Contract, (2) Silling's failure to properly perform its construction administration and project management services pursuant to the RJCF A/Silling Contract, and (-’I) the RJCFA's failure to provide information timely from its security hardware supplier, failure to require Carlton to perform its scheduling and coordination responsibilities, failure to require Silling to perform its construction administration and project administration ser vices, and the issuance of directives to accelerate the completion of the Project in the face of delays for which Nitro contended extensions of time to the performance of the RJCFA/Nitro Contract were due to be granted (collectively "Nitro Claims").
*167 8. By cover letter dated January 30, 1995, Claimant Nitro forwarded to the RJCFA and Silling, Nitro's claim for damages in the sum of $3,039,966, with a supporting Request for Additional Compensation dated January, 1995, and a Labor Impact Analysis dated January, 1995, prepared by an expert in the field of construction labor productivity loss and damages assessment, all supporting the claim of Nitro in the amount of $3,039,966.
9. On or about April 21, 1995, Nitro filed a Verified Notice of Claim ("Verified Claim") in the Court of Claims for the State of West Virginia, said action styled Nitro Electric Company v. West Virginia Regional Jail and Correctional Facility Authority, State of West Virginia, Claim No. CC-95-109 ("Court of Claims Action"), seeking damages of $3,039,966, interest, attorneys' fees, and other unspecified relief for claims relating to the RJCFA/Nitro Contract, Nitro Claims, and Project.
10. On or about December 10, 1999, Silling filed its Motion to Intervene in the Court of Claims Action in response to a demand from the RJCFA that Silling defend the RJCFA in the Court of Claims Action ("Silling Intervention").
11. On or about January 20, 2000, Carlton and INA filed their Motion to Intervene in the Court of Claims Action in response to a demand from the RJCFA that Carlton and INA defend the RJCFA in the Court of Claims Action ("Carlton/INA intervention").
12. The RJCFA as Respondent, and Carlton, INA, and Silling, as Intervenors herein, conducted extensive document and deposition discovery directed at Nitro's claim for damages totaling $3,0-19,966. The parties reviewed thoroughly the Project records generated and maintained by the RJCFA, Nitro, Carlton, Silling, and other contractors and subcontractors not parties to this action. Nitro's job cost reports, financial information, and claim back-up were produced and thoroughly reviewed by representatives and counsel for the RJCFA, Carlton, INA, and Silling, as well as experts retained by the Respondent and Intervenors to review Nitro's claims. No fewer than eight (8) depositions of Nitro Project personnel were conducted, consuming over fifteen (15) days. In addition, the RJCFA and tire Intervenors conducted a twelve hour deposition of Nitro's productivity and damages expert.
13. Upon conclusion ol’ the discovery, the parties engaged in protracted settlement negotiations. As a result of the settlement negotiations, Claimant Nitro, Respondent RJCFA, and Intervenors Carlton, INA, and Silling reached a settlement of the Nitro Claims, as well as a resolution of all claims and disputes relating to the RJCFA/Nitro Contract and RJCFA/Carlton Contract.
14. The terms of the settlement which resolved Nitro's claims totaling $3,039,966, plus interest, are as follows:
a) Carlton, INA, and Silling will collectively pay to Nitro the sum of $1,213,000.
*168 b) The RJCFA will pay to Nitro from special revenue fund #6676-2000-0615-099 the unpaid contract amount of $82,917 currently retained under the RJCFA/Nitro Contract.
C) The RJCFA consents to an Award in favor of Nitro in the amount of $204,083, to settle any and all disputes, including, without limitation, Nitro's claims for alleged acceleration efforts it undertook, and the resultant costs it incurred, to deliver to the RJCFA the Project on a date in advance of the date the Project would have been delivered to the RJCFA had'Nitro been granted time extensions's accordance with the terms of the RJCFA/Nitro Contract.
15. The RJCFA, through its counsel, and in conjunction with non-testifying experts retained to review the Nitro, Claims, consents to entry of this Order in that its terms represent fair compensation to Nitro, and eliminate an exposure of the RJCFA to the Nitro Claims in the principal amount of $3,039,966, which with interest at the statutory rate of 10% per annum create a total potential liability and exposure to the RJCFA in excess of $4,500,000. In addition, the settlement of this matter will allow the RJCFA and Attorney General to avoid the attorneys' fees and experts' fees and expenses which would attend conducting the trial during the weeks of May 15-19 and June 12-16, 2000, and thereafter, if necessary, as well as additional discovery scheduled during the intervening periods.
16. All claims, counterclaims, cross-claims and third-party claims filed in this Action by any of the parties will be withdrawn with prejudice upon Nitro's receipt of the settlement proceeds set forth in paragraph nos. 1 and 2 of the Settlement Agreement and Mutual Release entered into by and among the parties.
17. The parties acknowledge that the actual payment of said sum of $204,083 is contingent upon this Consent Order and Award's approval by the Legislature of the State of West Virginia by way of appropriation from the general revenue fund, and thatsaid amount shall not be paid from the operating budget of the RJCFA.
18. By execution of this Consent Order and Award, the RJCFA represents that it is in the best interests of the State of West Virginia and the RJCFA to resolve the disputes referenced herein pursuant to the terms of this Consent Order and Award.
UPON CONSIDERATION of the foregoing, this Court hereby enters an Award in favor of Claimant Nitro Electric Company and against the Respondent Regional Jail and Correctional Facility Authority in the amount of Two Hundred and Four Thousand Dollars ($204,083.00).
SO ORDERED, this 26th day of May, 2000.